WENTWORTH, Senior Judge.
This is an appeal from a final order of the Florida Board of Medicine adopting the recommended order of the hearing officer and denying the appellant Wagman’s appli *13 cation for a medical license based on appellant’s lack of the good moral character required by Florida law to safely engage in medical practice. §§ 458.311(l)(c) and 458.-331(l)(a), (hh), Fla.Stat. We reverse for a new hearing on the basis of a due process issue without reaching other procedural and evidentiary questions raised by appellant.
Appellant first contends that his misrepresentations to the Credentials Committee of the Board of Medicine are not material or rationally related to fitness for medical practice because “the facts at issue, if ... truthfully represented, would not have established a valid basis for denial of Dr. Wagman’s license by the Board.” We find no merit in that contention. The Board and hearing officer correctly reference Florida decisions supporting materiality of false statements in the application process, whether or not the true facts would have affected the result. See Gentile v. Department of Professional Regulation, Board of Medical Examiners, 448 So.2d 1087 (Fla. 1st DCA 1984). The hearing officer ultimately found no actual impropriety in the substance of the true facts, which had been explicitly denied by Dr. Wagman, that in his Florida employment he “did interpret current scans, ... did render medical opinions on current cases,” and “as opposed to the $1,000 a month ‘retainer’ he ascribed to such association, he whs receiving $5,208.33 as a ‘consultant.’ ”[1]
The second issue presented here relates to several alleged procedural deficiencies resulting in lack of authority in the Credentials Committee to elicit the false statements in question. We find reversal is required on due process grounds because the letter by which appellant’s attendance was obtained specifically limited the committee’s inquiry to subject matter other than the activities involved in the patent falsehoods above referenced. Although appellant, who appeared at that time without counsel, did not then object to the scope of inquiry, the issue was brought to the attention of the hearing officer before filing of the recommended order. The point is therefore properly preserved for appeal.
By letter of September 15,1989, Dr. Wagman was informed “you are required to make a personal appearance before the Credentials Committee of the Board of Medicine to discuss your less than favorable evaluations.”[2] (e.s.) The hearing was opened by the presiding committee member’s repetition of that limitation: “Dr. Wagman, the reason you are here is to elaborate a little bit about your poor recommendations from places where you have been as a resident.” However, before any inquiry in that direction the committee member said, “But first, I would like you to tell us [about schooling] and what you are doing at the present time.” (e.s.) The major part of the ensuing 78 page transcript of the committee hearing relates to Dr. Wagman’s then current job in Florida. Although that transcript contains ample support for the factual finding below that Dr. Wagman’s testimony on this subject, both as to his job functions and salary, was “patently false” and conflicting, we conclude that the subject matter was also patently beyond the scope of the notice served on him confining the inquiry on the specified date and time to the matter of unfavorable “evaluations.” That deficiency in no *14 tice clearly impacts the critical evidence on which the Board ultimately relied in denying licensure based on misrepresentation or lack of candor, and entitles appellant to a new hearing at which any of his other arguments which remain viable may be presented for initial consideration in the trial forum.[3]
The order is accordingly reversed and the cause remanded.
SMITH and MINER, JJ., concur.

. The recommended order below found, from the tenor of appellant’s testimony and his "maneuvering,” that the logical conclusion to be drawn was that he "feared that the Committee would conclude that he had been engaged in the practice of medicine without ... licensure.” Although that issue was resolved in appellant's favor, he contended below that the negative committee recommendation had caused him "to lose a potentially lucrative professional contract ... with a beginning annual salary after licen-sure of $124,999.92 ... and a potential ... of $250,000 annually in ‘reading fees.’”

. This language, in the context of appellant’s licensure application proceedings, indicated that the Credential Committee was concerned with certain unsatisfactory reviews he received as a clinician during his initial internship at Lancaster Hospital, Lancaster, Pa. There, according to one evaluation, he would apparently express his opinions on medical topics while largely ignorant of the appropriate course of care, and was verbally abusive toward the nursing staff and other subordinate members of the medical team.

. Appellant’s motion filed in this court on October 16, for leave to supplement the record and file supplemental brief, is mooted by our reversal for lack of due process in notice of the committee hearing below. Our disposition similarly moots other issues raised as to the committee’s powers or status as an investigative tool of the Board, which issues are accordingly preserved in event further licensure proceedings are pursued by Dr. Wagman in Florida.