627 So.2d 31 (1993)
James CHRYSLER, Appellant,
v.
DEPARTMENT OF PROFESSIONAL REGULATION, Appellee.
No. 93-1197.
District Court of Appeal of Florida, First District.
November 12, 1993.
Rehearing Denied December 21, 1993.
*32 Diane H. Tutt, of Diane H. Tutt, P.A., Ft. Lauderdale, for appellant.
Kathryn L. Kasprzak for Dept. of Business and Professional Regulation, Tallahassee, for appellee.
LAWRENCE, Judge.
James Chrysler appeals a final administrative order entered by the Board of Clinical Social Work, Marriage and Family Therapy and Mental Health Counseling, revoking his mental health counseling license. He raises five issues on appeal, the first of which is whether the Board denied him due process of law in considering matters not charged in the administrative complaint. We reverse and remand on this issue.
Chrysler received a Florida mental health counseling license on April 25, 1987. Based on a complaint filed by a Nebraska attorney, who represented the plaintiff in a civil malpractice suit filed against Chrysler in Nebraska, the Department of Professional Regulation filed an administrative complaint against him on February 11, 1992. The material allegations set forth in the complaint are as follows:
3. The Respondent [Chrysler] submitted an application to become a mental health counselor in the State of Florida.
4. The Respondent relayed a supervised experience verification form which indicated that Charlene Wozny was the Respondent's supervisor at Immanuel Medical Center, purporting to be signed by Ms. Wozny on February 16, 1987.
5. Further investigation revealed Charlene Wozny did not sign the Respondent's supervision form.
6. Charlene Wozny further affirms that she did not supervise the Respondent at any time.
7. On his application, dated February 19, 1987, the Respondent stated that he had never been denied a license to practice a psychological service in any state.
8. The Respondent was denied a license to practice a psychological service in Nebraska prior to his application for licensure in Florida.
Based upon his response to the application question regarding prior denial of licensure and the inaccurate verification form, Chrysler was charged with violating sections 491.009(2)(a) and 491.009(2)(q), Florida Statutes (1991).[1] In the complaint, the Department requested a variety of penalties, including revocation or suspension of his license. On March 10, 1992, Chrysler signed an election of rights form, stipulating there were no *33 disputed issues of fact regarding the factual allegations in the complaint and choosing an informal hearing. Three informal hearings were held before the Board. In the first, he appeared pro se, and in the remaining two he was represented by counsel. The second hearing was continued when it appeared that settlement negotiations might be successful.
At the first and third hearings, although the complaint did not expressly refer to it, the Board reviewed material concerning Chrysler's involvement in a civil malpractice lawsuit in Nebraska. The suit against Chrysler stemmed from allegations of sexual misconduct with one of his minor patients in 1981. The Department had obtained this information during its investigation. Prior to the first hearing, Chrysler and the Department entered into a proposed stipulation, in which both parties agreed to probation. At the hearing, in determining whether to grant or reject the proposed stipulation, the Board questioned Chrysler about the civil malpractice case in Nebraska. The Board subsequently expressed its belief Chrysler may have misrepresented his prior supervised experience in order to avoid the Board's discovery of these allegations. Chrysler, who appeared pro se, answered the Board's questions. He testified that, at the time he applied for Florida licensure, the civil suit was pending but had not been resolved.[2] He further testified that his reason for moving from Nebraska to Florida in 1984 was to be closer to his aging parents.
Following the hearing, the Board voted to reject the stipulation, and offered Chrysler a counterstipulation. The counterstipulation provided for a six-month suspension, an eighteen-month probation, and a $1,000 fine. The record reflects that Chrysler never signed the counterstipulation.
At the third and final hearing, the Board was advised by its attorney that it could consider the alleged Nebraska incident and also take the factual allegations in the civil suit as true because Chrysler had defaulted in that suit. Various Board members made the following comments:
MR. LANDIS: [The civil judgment is] a situation that if it had occurred here in Florida I would guess to be a third degree felony under Chapter 491 and a very serious matter ... I think that needs to be a part of our deliberation here.
MR. LANDIS: [T]his kind of fraudulent misrepresentation in the application process is ... revocation is an appropriate response to that. And if the sexual misconduct charges in Nebraska were to be true, that is cause for revocation... . [W]hat we're considering is whether there are mitigating circumstances that would move us to lighten it.
MR. SZUCH: I need to know that if this man is going to be seeing people with kids that the public is safe. And based on what I'm reading, I have not been convinced that I could argue it is.
CHAIRMAN: As we look at the stipulation which we counter-proposed ... I think things have changed somewhat since then... . I think there's been some real questions brought up during this meeting. Mr. Szuch has acknowledged those questions.
The Board formally voted to revoke Chrysler's license based on violation of section 491.009(2)(a) and to impose an administrative fine based on violation of section 491.009(2)(q). On March 30, 1993, the Board issued a final order adopting the facts and the conclusions of law set forth in the complaint and revoking Chrysler's license.
Chrysler argues that the Board's consideration of the Nebraska allegations denied him due process as they were not raised in the complaint, and he was not given notice that such allegations would form part of the administrative proceeding or form the basis for imposition of the harshest penalty possible (i.e., revocation of his license). The Board argues that Chrysler's due process rights were not violated as he had adequate *34 notice of the charges against him and of the matters the Board would consider in mitigation or aggravation of his penalty. We agree with Chrysler, and find the Board improperly considered matters not formally charged in the complaint in imposing Chrysler's penalty.
There are three cases from our sister courts that are factually very similar to the case before us. In Klein v. Department of Business & Professional Regulation, 625 So.2d 1237, (Fla. 2d DCA 1993), the Second District held that the Board of Medicine erred in two ways: (1) it considered matters not charged in the complaint, and (2) it failed to terminate the informal hearing when it was apparent there were disputed issues of fact. In reversing and remanding for reconsideration of the penalty, the court asserted that section 455.225(5) applied to both the guilt and penalty phases of an informal hearing and, as disputed issues of fact arose during the penalty phase of the informal hearing, Klein was entitled to a formal hearing.
Similarly, in Celaya v. Department of Professional Regulation, Board of Medicine, 560 So.2d 383 (Fla. 3d DCA 1990), the Board strayed outside the scope of the charges in the complaint. Although the complaint was limited to conviction of a crime related to the practice of medicine (i.e., Medicaid fraud), the Board questioned the physician about his competence to practice medicine. The Board concluded the physician was not competent to practice medicine and revoked his license. The court reversed, holding the Board had violated the physician's due process rights to be notified of the charges against him by questioning him about matters not charged in the complaint.[3]
A final instructive case is Decola v. Castor, 519 So.2d 709 (Fla. 2d DCA 1988), involving a teacher who had his certificate revoked by the Education Practices Commission following an informal hearing. The teacher had admitted the factual allegations in the complaint. Nevertheless, he argued the Commission violated his due process rights by considering matters outside the stipulated record in imposing its penalty. Allegations of drug possession and drug use did not form part of the complaint but were included in the materials provided to the Commission. The court held that it was error for this material to have been included, but concluded the error was harmless.
Here, as in Klein and Decola, the Board improperly considered the Nebraska allegations during the first and third hearings. The allegations were not included in the complaint, and did not form the basis of any formally charged offense. Significantly, at oral argument, counsel for the Department admitted the Department had not charged Chrysler on these allegations because they were determined to be legally insufficient. Nonetheless, the Board members repeatedly questioned Chrysler about the allegations of sexual misconduct and about the lawsuit's resolution. Moreover, at least two Board members expressed concern for the wisdom and safety of Chrysler working with children. Although the Board did not expressly state in its final order that it based its decision, in whole or in part, on the Nebraska incident, review of the record indicates the Board considered these allegations in determining the appropriate penalty to impose. The record indicates that the Board believed the allegations were relevant as a possible motive for discrepancies in Chrysler's application.
The Board's improper consideration of this evidence violated Chrysler's due process rights and does not constitute harmless error. Although the Second District in Decola applied a competent substantial evidence test to determine whether the agency's error was harmless, we believe the more appropriate test for an alleged violation of one's due process rights to a fair hearing would appear to be the harmless error test generally applied in civil cases.[4] An error is *35 harmful where there is a reasonable probability a different result would have been reached but for the error committed. Katos v. Cushing, 601 So.2d 612 (Fla. 3d DCA 1992); Damico v. Lundberg, 379 So.2d 964 (Fla. 2d DCA 1979) (citing Stecher v. Pomeroy, 253 So.2d 421, 422 (Fla. 1971)), cert. denied, 389 So.2d 1108 (Fla. 1980).
While there is competent substantial evidence in the record to support the fact that Chrysler knew the verification form was not completely accurate, as well as evidence showing he conceded his response to the denial of licensure question was inaccurate, the record indicates there is a reasonable probability the Board would have imposed a less harsh penalty but for the improper consideration of the Nebraska allegations.
By our holding today, we do not imply that an incident of sexual misconduct with a patient, or allegations thereof, are not proper for the Board to consider in disciplining its licensees. Such allegations, however, must be properly charged so as not to deprive a licensee of his fundamental due process rights. Accordingly, we reverse and remand for a consistent proceeding in which the Board may, if it so desires, amend its administrative complaint to include the allegations of sexual misconduct. Our disposition of this matter makes it unnecessary to address the remaining issues on appeal.
SMITH and KAHN, JJ., concur.
NOTES
[1] Section 491.009(2)(a) authorizes disciplinary action where an applicant attempts to obtain, obtains, or renews a license or certificate by bribery or fraudulent misrepresentation or through an error of the board or the department. Section 491.009(2)(q) authorizes disciplinary action for violations of chapter 455, including violations of section 455.227(1)(e), for "obtain[ing a license] by fraud or material misrepresentation of a material fact."
[2] Although the Nebraska case was reduced to judgment in 1987, Chrysler stated he did not know about it until December 1991. He claims he left a forwarding address, but never received any further information or notice about the pending proceedings. He had participated in depositions and other discovery, but did not appear at the trial, resulting in a jury verdict of $150,000 against him.
[3] Although Celaya differs from the present case because the Board had made an express finding in its final order that Celaya was guilty of an offense not charged in the complaint, the case is helpful in that the court fashioned its holding in terms of the Board's improper questioning of the licensee. 560 So.2d 383.
[4] In Celaya v. Department of Professional Regulation, Board of Medicine, 560 So.2d 383 (Fla. 3d DCA 1990), and Wagman v. Florida Board of Medicine, 590 So.2d 12 (Fla. 1st DCA 1991), the courts found the resulting due process violations were grounds for reversal.