MAKAR, J.,
concurring in part, dissenting in part.
This case, which the Court has unanimously taken en bane on the motion of the three-judge panel, alters our precedents by dispensing with notice and a hearing before imposition of a minimum public defender’s lien against indigent defendants. The elimination of wasteful hearings is *989 laudable,[6] but judicially eliminating a longstanding statutory requirement of notice is less so.
The ostensible problem arises from cases where trial judges fail to give notice to indigent defendants of the imposition of statutory liens for public defender attorney’s fees/costs under section 938.29, Florida Statutes. Because the statute requires notice, the typical result has been a remand for an evidentiary hearing that changes nothing; the defendant now has notice of the hen but has no legitimate basis for contesting its amount because it is set at statutory mínimums, which were first established seven years ago. The annual number of appellate reversals of this type is unclear, but is sufficient to reassess the matter given the obvious waste they generate on remand.
The question is, how to do away with these wasteful hearings? Two approaches come to mind:. one that eliminates only the hearing, and one that eliminates notice and the hearing. In following the latter course, the Court reinterprets section 938.29, Florida Statutes, by receding from cases that “require notice and hearing before imposition of a minimum public defender’s lien.” Majority op. at 8. Under this approach, if a trial judge determines that mínimums are to be imposed, the defendant need not be notified and, of course, no hearing occurs. Prospectively, trial judges would be freed from providing notice in cases other than those where the trial court’s determination of fees and costs exceeds statutory thresholds.[7]
The root of the problem, however, isn’t notice, which the statute requires, it is the wasteful hearings themselves. While eliminating both may be most expedient, it judicially erases the requirement of notice from the statute. The notice provision of section 938.29, set forth in subsection (5), requires that “adequate notice” be given, an unwavering legislative requirement that goes back almost two decades. See Ch. 97-271, § 22, Laws of Fla. And the only change in nearly twenty years was to make its provisions mandatory. See Ch.2003-402, § 128, Laws of Fla. (“may” changed to “shall” in first clause). It now states:
(5) The court having jurisdiction of the defendant-recipient shall, at such stage of the proceedings as the court may deem appropriate, determine the value of the services of the public defender, special assistant public defender, office of criminal conflict and civil regional counsel, or appointed private legal counsel and costs, at which time the defendant-recipient or parent, after adequate notice thereof, shall have opportunity to be heard and offer objection to the de *990 termination, and to be represented by counsel, with due opportunity to exercise and be accorded the procedures and rights provided in the laws and court rules pertaining to civil cases at law.
§ 938.29(5), Fla. Stat. (emphasis added). The notice requirement has remained unaltered since its inception in 1997, and the Legislature has not renounced the need for notice or deemed it discretionary under subsection (5).
For its change in course, the Court relies on a 2008 modification to subsection (1) of the statute, which required that an attorney’s fees/costs lien be set at no less than $50 and $100, for misdemeanors and felonies, respectively. Ch.2008-111, § 45, Laws of Fla. (amending § 938.29(1), Fla. Stat.). Nothing in the language of that amendment purported to change the requirement of notice to indigent defendants, either as required by subsection (5) or by some inferential linkage to the newly-enacted minimum liens. Because the notice requirement in section 938.29(5) has not changed since its adoption, it’s a poor candidate for judicial reinterpretation. In effect, judicially eliminating notice appends an amendment to subsection (5) saying, “Where the value of services and costs are set at the minimum amounts in subsection (1), notice is not required under this subsection.”
On the other hand, the problem of unnecessary hearings can be remedied without judicially eliminating statutory notice by applying the harmless error doctrine used in civil cases like this one. § 59.041, Fla. Stat. (“No judgment shall be set aside or reversed ... in any cause, civil or criminal ... unless in the opinion of the court to which application is made, after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice.”); see, e.g., Chrysler v. Dep’t of Prof'l Reg., 627 So.2d 31, 34-35 (Fla. 1st DCA 1993) (“[T]he more appropriate test for an alleged violation of one’s due process rights to a fair hearing would appear to be the harmless error test generally applied in civil cases. An error is harmful where there is a reasonable probability a different result would have been reached but for the error committed.”) (footnote omitted); see generally Philip J. Padovano, Florida Appellate Practice § 19:11 (2015 ed.) (“Not all error is reversible error. To the contrary, it is an established principle that an appellate court will not reverse an order or judgment of a lower tribunal if the error complained of is harmless.”). Where notice is not given, an appellate court would note the trial court’s error but have discretion to deem it harmless if, absent something more prejudicial, only statutory minimums are imposed. This approach would relieve appellate courts from reversing where notice wasn’t given; affirmance would be in order, thereby saving the trial court from having to hold a useless hearing on remand.
Effects on judicial behavior are important. Telling trial judges they don’t have to provide statutory notice in this class of cases creates the potential for unintended consequences, such as not giving notice in cases when they should or imposing liens erroneously without notice; maintaining the statutory status quo means fewer snafus. Moreover, even if minimum liens are imposed, indigent defendants are still entitled to notice of their imposition, as Florida Rule of Criminal Procedure 3.720(d)(1) specifically requires: “If the accused was represented by a public defender or other court appointed counsel, the court shall notify the accused of the imposition of a lien pursuant to section 938.29, Florida Statutes.” (emphasis added). The better approach is to continue requiring notice in all cases as the statute and Rule require, *991 leaving it to the Legislature to amend the statute and our supreme court to deal with the Rule, if deemed appropriate to eliminate notice.
No approach is perfect. A risk of the harmless error approach is that some trial judges may decide to not give notice because doing so is likely to be deemed harmless error on appeal. What they risk is that an appellate court will point out their error, which they won’t like; and repeated errors of this type risk judicial ignominy. Though imperfect, a moderate deterrent exists to ensure that notice is given. Notice is neither costless nor costly, and may have little tangible benefit; but it has the universally-recognized intrinsic value of ensuring that an affected party is made aware of a lien’s imposition and the existence of an adverse money judgment so that its validity can be questioned.
In conclusion, a harmless error approach better addresses the problem at hand. It eliminates the costly/inefficient remedy of reversing and remanding for a meaningless hearing in minimum lien cases, preserves long-standing statutory language and caselaw, ensures that notice continues to be given in all cases, avoids creating conflict with other district courts, and requires no modification of Rule 3.720. Judicial custom dictates that my disagreement with eliminating notice be deemed a dissent, but in truth it is a dement way of saying there are other ways of solving the same problem. Multi modi quibus feles excoriatur.

. The Court’s departure from precedent is "to eliminate essentially meaningless procedures and in order to prevent further waste of time and resources." Majority op. at 7. Both of these goals are laudable from a judicial administration perspective, and music to the ears of cost/benefit aficionados. Saving scarce taxpayer dollars by avoiding governmental waste, though not an official part of the judiciary’s charge, is nonetheless a worthy consideration in determining in appropriate cases what the legislative branch intended in its enactments. Doing so opens the door to reconsidering a line of precedents that has provided no economic benefit, provided a statute's language, structure, intent, and history are done no harm in the process.

. One incentive that statutory mínimums create is, at least on the margin, for trial judges to impose the mínimums to avoid a possible hearing that the statute would otherwise require (i.e., why impose a $1000 lien for fees expended when doing so will require notice to the defendant and a hearing; why not just impose mínimums and avoid any further expenditure of court time/resources on a hearing?). Whether and how such an incentive is acted upon is unknown. •