LABARGA, J.
This case is before the Court for review of the decision of the Second District Court of Appeal in Daniels v. State, 72 So.3d 227 (Fla. 2d DCA 2011). The district court certified that its decision is in express and direct conflict with the decision of the First District Court of Appeal in Riesel v. State, 48 So.3d 885 (Fla. 1st DCA 2010). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. The issue before us concerns whether the standard jury instruction for the offense of manslaughter by act, as amended in 2008,[1] erroneously stated the required elements of the crime and whether fundamental error occurred when that instruction was given in Daniels’ trial. For the reasons set forth below, we conclude that the 2008 standard instruction for manslaughter by act erroneously required the jury to find that the defendant intended to cause the death of the victim, in contravention to the requirements of section 782.07, Florida Statutes (2009). We further conclude that giving the 2008 standard jury instruction constituted fundamental error in this case. Accordingly, we quash the decision of the Second District in Daniels and approve the decision of the First District in Riesel.
BACKGROUND AND FACTS
The facts of the murder in the instant case were summarized in the district court opinion in Daniels as follows:
On May 4, 2007, after an altercation with one person at a residence, Daniels *411 left, went to his home to retrieve his hand gun, and returned to the residence. Daniels fired one shot with the intent of hitting the man involved in the previous altercation. However, the shot hit a female bystander [Amanda Fanter] in the head, and she died. Daniels was charged with one count of first-degree murder.
During taped interviews with officers, Daniels stated that prior to firing the shot, he saw the victim but was being approached by a group of men, including the man with whom he had previously fought. Daniels assumed the men had guns because he had a gun. Daniels fired the gun once and ran. He stated that he did not aim at the victim and that although he “probably” meant to hit one of the men, he did not mean to Mil anyone.
72 So.3d at 228. The altercation arose out of an incident in which Daniels went to confront the boyfriend of his former girlfriend, the mother of Daniels’ daughter. According to Daniels’ statements to Detective Spoor of the Pinellas County Sheriffs Office, Daniels heard that the boyfriend was negligent in caring for Daniels’ daughter while babysitting her. When Daniels went with several friends to confront the boyfriend, he was met by a group of men with whom he argued. Daniels then left the scene and returned with a gun. During the second visit to the apartment complex, according to Daniels’ statement to Detective Spoor, Daniels approached the apartment building and saw a female yelling to “call down the guys” who, he said, were coming.
Daniels said he assumed the men had a gun, so he “just bust off one and ran off.” He said he did not aim at Fanter but that he shot “[r]eally just to back off — not really back off because I probably did mean to hit one, but I didn’t mean to — you know, I didn’t mean to Mil no one, but — .” Daniels insisted during the interview that he did not point the gun at Fanter and that although he intended to fire at the men, he did not intend to kill the victim.
Nicole Schipper, a friend who had driven Daniels back to the apartment complex, testified that on the way there Daniels displayed a handgun and told her that he had been in an argument earlier with some people and intended to go back and scare somebody. Schipper dropped off Daniels and some other men at the complex and was preparing to leave when she saw Daniels stop and raise his arm. She then heard two shots.[2] Daniels and the other men jumped back in her car and, as they were leaving the scene, Schipper said, Daniels told her, “I hope I didn’t kill her.”
Daniels was charged with first-degree murder and tried by jury commencing on September 15, 2009. At the conclusion of the evidence and closing argument, the trial judge instructed the jury as to first-degree murder, second-degree murder, and manslaughter by act. The instruction given for manslaughter by act was read to the jury in pertinent part as follows:
Manslaughter. Before you can find the defendant guilty of manslaughter, the State must prove the following two elements beyond a reasonable doubt.
Elements. One, Amanda Lynn Fanter is dead; two, Aaron Treves Daniels intentionally caused the death of Amanda Lynn Fanter.
However, the defendant cannot be guilty of manslaughter if the Mlling was *412 either justifiable or excusable homicide as I have previously explained those terms.
In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to cause death, only an intent to commit an act which caused death.
No objections to the jury instructions for manslaughter were lodged by defense counsel. The jury returned a verdict finding Daniels guilty of second-degree murder, with a special interrogatory verdict finding that Daniels did actually possess and discharge a firearm in the commission of the offense and, as a result, Amanda Fanter died. The trial court entered judgment for second-degree murder and sentenced Daniels to life in prison with a twenty-five year minimum mandatory term under the 10-20-Life statute.[3]
On appeal, Daniels argued that the manslaughter by act jury instruction was erroneous and that the error was fundamental in his case, but the Second District disagreed and affirmed his conviction and sentence in Daniels, 72 So.3d at 232. In so doing, the court concluded that the 2008 manslaughter by act instruction “does not include an erroneous intent-to-kill element” found fundamentally erroneous in State v. Montgomery, 39 So.3d 252 (Fla.2010). Id. at 228. In so holding, the Second District certified that its decision expressly and directly conflicted with the decision of the First District in Riesel in which that court concluded that the 2008 instruction “is not materially different from the instruction held to be fundamental error in State v. Montgomery, 39 So.3d 252 (Fla.2010), because it, too, erroneously stated that intent to kill was an element of manslaughter.” Riesel, 48 So.3d at 886.
The district court in Daniels relied on the fact that the 2006 standard instruction found to be erroneous in Montgomery was amended in 2008, before issuance of Montgomery, and included the following phrase: “In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to cause death, only an intent to commit an act which caused death.”[4] The district court in Daniels recognized that “[i]t is undisputed that manslaughter by act does not require proof of intent to kill the victim.” 72 So.3d at 229. However, the district court concluded:
We now hold that the 2008 amended instruction did not erroneously require proof of intent to kill. Any error in the prior instruction was cured by the addition of language clarifying that the requisite intent was that necessary to commit an act. The 2008 amended instruction is materially different from the instruction at issue in Montgomery, and Daniels was not deprived of an accurate manslaughter instruction.
Daniels, 72 So.3d at 230. In so holding, the district court also noted:
[T]he Montgomery court stated that the 2008 amendment “added additional language to clarify that the requisite intent for manslaughter by act is the intent to commit an act that caused the death of the victim[.]” Id. The court went on to summarize that “the relevant intent is the intent to commit an act which caused death,” concluding that the amended language was sufficient to cure any de- *413 feet resulting from the language of element two.
Id. at 230 (quoting Montgomery, 39 So.3d at 257). Thus, the Second District interpreted the reference to the 2008 amendment in our decision in Montgomery as a conclusion that addition of the phrase “only an intent to commit an act which caused death” clarified the overall intent of the manslaughter instruction, thereby rendering it correct. Finally, the Second District in Daniels stated:
Because we conclude that the instruction given at Daniels’ trial did not require the jury to find that Daniels intended to kill the victim, Daniels was not deprived of an accurate manslaughter instruction and the trial court did not fundamentally err in giving the 2008 amended instruction. We certify that this decision conflicts with Riesel v. State, 48 So.3d 885 (Fla. 1st DCA 2010), and its progeny within the First District.
Id. at 232.
The First District in Riesel was faced with the same issue presented in this case. Riesel appealed his conviction for second-degree murder and, on appeal, contended that giving the 2008 version of the standard jury instruction for manslaughter by act in his case constituted fundamental error because it erroneously continued to require that the jury find the defendant intentionally caused the death of the victim. The First District agreed that the requirement was erroneous and further that the language added to the instruction in 2008 did not eliminate the separate requirement in the instruction that the jury find the defendant intentionally caused the death of the victim. The First District stated:
The manslaughter instruction in the present case is not materially different from the instruction held to be fundamental error in State v. Montgomery, 39 So.3d 252 (Fla.2010), because it, too, erroneously stated that intent to kill was an element of manslaughter. Montgomery, 39 So.3d at 256, 259 (manslaughter by act instruction which provided that the state must prove the defendant “intentionally caused the death of’ the victim resulted in fundamental error because the “instruction erroneously imposed upon the jury a requirement to find that Montgomery intended to kill” the victim).
Riesel, 48 So.3d at 886 (footnote omitted). Thus, Riesel is in express and direct conflict with the holding of the Second District in Daniels.
ANALYSIS
The conflict issue in this case presents a pure question of law and this Court’s review is therefore de novo. See D’Angelo v. Fitzmaurice, 863 So.2d 311, 314 (Fla.2003) (“The standard of review for the pure questions of law before us is de novo.”). The question before the Court is whether the manslaughter by act jury instruction, Florida Standard Jury Instruction 7.7, as it was amended in 2008, suffered from the same infirmity as the 2006 jury instruction that this Court found fundamentally flawed in Montgomery. The flaw we identified in the 2006 instruction was the requirement that the jury find the defendant “intentionally caused the death” of the victim even though the manslaughter statute prescribes no such requirement. When the manslaughter jury instruction was amended in 2008, several years before Montgomery was decided, the instruction retained the “intentionally caused the death” language appearing in the first part of the instruction. As noted above, the amendment added in 2008 was as follows:
[W]e modify instruction 7.7 as follows:
*414 In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to cause death, only an intent to commit an act which caused death. See Hall v. State, 951 So.2d 91 (Fla. 2d DCA 2007).
In re Standard Jury Instructions in Criminal Cases—Report No. 2007-10, 997 So.2d at 403 (adding the underlined language to the 2006 instruction).
In instructing Daniels’ jury pursuant to the 2008 instruction, the jury was told that before it could find Daniels guilty of manslaughter, the State must prove that “Aaron Treves Daniels intentionally caused the death of Amanda Lynn Fanter.” Later, in the same instruction, the trial judge also told the jury that “[i]n order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to cause death, only an intent to commit an act which caused death.” Daniels now contends, as he did below, that fundamental error occurred in giving this 2008 jury instruction because, just as in Montgomery, the instruction still advised the jurors that to find him guilty of manslaughter, they must find that he “intentionally caused the death” of the victim.
The State counters first that the 2008 instruction was, in fact, a correct statement of the law because even though the jury was given the “intentionally caused the death” language, it was also advised that in order to convict for manslaughter by intentional act, they need not find that Daniels had a premeditated intent, but “only an intent to commit an act which caused death.” The State contends that this sufficiently advises the jury that the only intent required to prove manslaughter by act is the intent to commit the act that ultimately caused the death. The State further contends that a reference to the 2008 instruction in this Court’s decision in Montgomery discloses a conclusion that the 2008 instruction correctly stated the intent required by the manslaughter statute. Finally, the State contends that even if error occurred, it was not fundamental based on the facts of this case. As explained below, we disagree with the State on each of these contentions.
Because our decision in Montgomery is integral to resolution of the certified conflict in this case, that decision will be discussed first. In Montgomery, we recognized that the 2006 version of the standard jury instruction on manslaughter by act required the jury to find that the defendant “intentionally caused the death” of the victim. See Fla. Std. Jury Instr. (Crim.) 7.7 (2006). We also recognized that section 782.07, Florida Statutes (2005), did not require the jury to make such a finding. That statute provided in pertinent part as follows:
782.07. Manslaughter; aggravated manslaughter of an elderly person or disabled adult; aggravated manslaughter of a child; aggravated manslaughter of an officer, a firefighter, an emergency medical technician, or a paramedic.— (1) The killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification according to the provisions of chapter 776 and in cases in which such killing shall not be excusable homicide or murder, according to the provisions of this chapter, is manslaughter, a felony of the second degree, punishable as provided in s. 775.082, s. 775.088, or s. 775.084.
§ 782.07(1), Fla. Stat. (2005). The statute was identical when Daniels was tried in 2009. In discussing the requirements of the statute, we explained in Montgomery:
We observe that the statute does not impose a requirement that the defendant intend to kill the victim. Instead, *415 it plainly provides that where one commits an act that results in death, and such an act is not lawfully justified or excusable, it is manslaughter.
Although in some cases of manslaughter by act it may be inferred from the facts that the defendant intended to kill the victim, to impose such a requirement on a finding of manslaughter by act would blur the distinction between first-degree murder and manslaughter. Moreover, it would impose a more stringent finding of intent upon manslaughter than upon second-degree murder, which, like manslaughter, does not require proof that the defendant intended to kill the victim. Thus, we conclude that under Florida law, the crime of manslaughter by act does not require proof that the defendant intended to kill the victim.
Montgomery, 39 So.3d at 256. We went on to conclude that giving the erroneous 2006 jury instruction — requiring the jury to find the killing was intentional in order to convict for manslaughter by act — constituted fundamental error because Montgomery was convicted of second-degree murder, one step removed from manslaughter, and because he was entitled to a correct instruction on manslaughter. This Court explained, “[i]f the jury is not properly instructed on the next lower crime, then it is impossible to determine whether, having been properly instructed, it would have found the defendant guilty of the next lesser offense.” Id. at 259 (quoting Pena v. State, 901 So.2d 781, 787 (Fla.2005)). We further explained:
The lesser included offense of manslaughter is just one step removed from second-degree murder. Because Montgomery’s conviction for second-degree murder was only one step removed from the necessarily lesser included offense of manslaughter, under Pena, fundamental error occurred in his case which was per se reversible where the manslaughter instruction erroneously imposed upon the jury a requirement to find that Montgomery intended to kill [the victim].
Montgomery, 39 So.3d at 259 (footnote omitted).[5]
This Court in Montgomery also noted that the 2006 jury instruction made clear that premeditated intent to cause death was not required, but held that portion of the instruction did not alleviate the fundamental error. We explained:
Although the instruction also provided that “it is not necessary for the State to prove that the defendant had a premeditated intent to cause death,” we conclude that this language was insufficient to erode the import of the second element: that the jury must find that the defendant intended to cause the death of the victim.
Montgomery, 39 So.3d at 257. It is the additional phrase added to this passage in 2008 — “only an intent to commit an act which caused death” — which the State now contends saves the 2008 jury instruction from the same infirmity we found in the 2006 instruction in Montgomery. We conclude, however, that the phrase added in 2008 was also insufficient to erode the import of the second, incorrect element contained in the 2008 instruction that continued to require the jury to find that the *416 defendant intentionally caused the death of the victim.
The State also contends that statements made by this Court in Montgomery relating to the 2008 instruction implicitly approved the 2008 amended instruction as a valid statement of law. However, our statement in Montgomery concerning the 2008 amendment to the manslaughter by act jury instruction was not a statement approving that instruction, which was not at issue in the case.[6] Moreover, contemporaneously with the issuance of the Montgomery opinion, we approved an interim amendment to the manslaughter by act instruction in pertinent part as follows:
To prove the crime of Manslaughter, the State must prove the following two elements beyond a reasonable doubt:
1. (Victim) is dead.

Give 2a, 2b, or 2c depending upon allegations and proof.

2. a. (Defendant’s) act(s) intentionally caused the death of (victim).
b. (Defendant) intentionally procured the death of (victim).
c. The death of (victim) was caused by the culpable negligence of (defendant).
[[Image here]]

Give only if 2{af. alleged and proved, and manslaughter is being defined as a lesser included offense of first degree premeditated murder.

In order to convict of manslaughter by intentional- act, it is not necessary for the State to prove that the defendant had an premeditated intent to cause death, only an intent to commit an act that was not justified or excusable and which caused death. See Hall v. State, (951 -So.2d-91 (Fla. 2d DCA 2007).
In re Amendments to Standard Jury Instructions in Criminal Cases—Instruction 7.7, 41 So.3d 853, 854-55 (Fla.2010) (strik-ethroughs and underlines denote amendments).
After issuance of the Montgomery decision and after issuance of the 2010 interim instruction, we again amended the instruction, in 2011, to further correct the flaw identified in Montgomery. That amendment stated in pertinent part: *417 In re Amendments to Standard Jury Instructions in Criminal Cases—Instruction 7.7, 75 So.3d 210, 211-12 (Fla.2011).
*416 To prove the crime of Manslaughter, the State must prove the following two elements beyond a reasonable doubt:
1. (Victim) is dead.

Give 2a, 2b, or 2c depending upon allegations and proof.

2. a. (Defendants) intentionally committed an act(s)- or acts that caused the death of (victim).
b. (Defendant) intentionally procured an act that caused the death of (victim).
c. The death of (victim) was caused by the culpable negligence of (defendant).
[[Image here]]
Give only if 2a alleged and proved, and manslaughter-is-being defined as a lesser included-offense of first degree premeditated murder.
In order to convict of manslaughter by act, it is not necessary for the State to prove that the defendant had an intent to cause death, only an intent to commit an act that was not merely negligent, justified, or excusable and which caused death.
*417 The 2008 amendment resulting in the phrase, “In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to cause death, only an intent to commit an act which caused death,” did not neutralize or mitigate the earlier element requiring proof of intent to kill. Because we see that the 2008 amendment essentially rendered the instruction ambiguous, we cannot conclude that the instruction correctly states the elements of proof of manslaughter by act. Thus, we conclude that the jury was not correctly and completely instructed on the elements of the crime of manslaughter by act in Daniels’ case.
We ton next to the question of whether giving the 2008 instruction constituted fundamental error in this case.
Fundamental Error
We have held repeatedly that jury instructions are subject to the contemporaneous objection rule and, “absent an objection at trial, can be raised on appeal only if fundamental error occurred.” Garzon v. State, 980 So.2d 1038, 1042 (Fla.2008) (quoting State v. Delva, 575 So.2d 643, 644 (Fla.1991)); see also State v. Weaver, 957 So.2d 586, 588 (Fla.2007); Harrell v. State, 894 So.2d 935, 941 (Fla.2005); Reed v. State, 837 So.2d 366, 370 (Fla.2002). The salient purpose of the rule of contemporaneous objection is to place the trial judge on notice that error may have been committed and provide the court with an opportunity to correct the error at that time. See Corona v. State, 64 So.3d 1232, 1242 (Fla.2011) (citing Harrell, 894 So.2d at 940); see also § 924.051(l)(b), Fla. Stat. (2012) (noting that a legal argument or objection is preserved when it is timely raised before and ruled upon by the trial court and is sufficiently precise to fairly apprise the court of the relief sought and the grounds therefor).
We remain mindful that, in the realm of criminal jury instructions, “[i]t is an inherent and indispensable requisite of a fair and impartial trial ... that a defendant be accorded the right to have a Court correctly and intelligently instruct the jury on the essential and material elements of the crime charged and required to be proven by competent evidence.” Delva, 575 So.2d at 644 (quoting Gerds v. State, 64 So.2d 915, 916 (Fla.1953)). However, not all error in jury instruction is fundamental. Garzon, 980 So.2d at 1042. As we explained in Delva
To justify not imposing the contemporaneous objection rule, “the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.” Brown [v. State, 124 So.2d 481, 484 (Fla.1960) ]. In other words, “fundamental error occurs only when the omission is pertinent or material to what the jury must consider in order to convict.”
Delva, 575 So.2d at 644-45 (quoting Stewart v. State, 420 So.2d 862, 863 (Fla.1982) (emphasis added)). “In defining the scope of the fundamental error doctrine, we have explained that a fundamental error is one that ‘goes to the foundation of the case or goes to the merits of the cause of action.’ ” Jaimes v. State, 51 So.3d 445, 448 (Fla.2010) (quoting Sanford v. Rubin, 237 So.2d 134, 137 (Fla.1970)). Further, we reiterated that appellate courts should employ the doctrine of fundamental error “very guardedly.” Sanford, 237 So.2d at 137.
“Failing to instruct on an element of the crime over which the record reflects there was no dispute is not funda *418 mental error.” Garzon, 980 So.2d at 1042 (quoting Stewart, 420 So.2d at 863). Thus, a defective instruction in a criminal case can only constitute fundamental error if the error pertains to a material element that is disputed at trial. Accordingly, where the trial court fails to correctly instruct on an element of the crime over which there is dispute, and that element is both pertinent and material to what the jury must consider in order to decide if the defendant is guilty of the crime charged or any of its lesser included offenses, fundamental error occurs. In Reed, we made clear that “fundamental error is not subject to harmless error review.” 837 So.2d at 369-70.
In the present case, Daniels’ intent in shooting the gun was in dispute. The State charged him with first-degree premeditated murder, and argued in closing that he intended to kill Fanter when he shot the gun, and that this was not a case of manslaughter.[7] In Daniels’ statement to police, which was presented in the testimony of Detective Spoor, and in Daniels’ comments to the State’s witness Nicole Schipper, Daniels insisted he did not aim at anyone and did not intend to kill Fanter when he fired the gun. Schipper testified that Daniels told her he only intended to scare someone with the gun. Thus, the issue of intent to kill was clearly before the jury as a disputed issue. Therefore, Daniels’ intent or lack of intent to cause death was material and pertinent to what the jury had to consider in deciding if he was guilty of first-degree murder, second-degree murder, or manslaughter.
In Montgomery, we similarly focused on the fact that the instruction was “pertinent or material to what the jury must consider in order to convict” and emphasized the defendant’s right to have the jury correctly instructed. See Montgomery, 39 So.3d at 258 (quoting Delva, 575 So.2d at 645). Although in Montgomery we mentioned the jury’s right to exercise its pardon power, our decision was firmly based on the right of a defendant to have the jury correctly instructed on a disputed element that is pertinent or material to what it must consider in order to convict. And because the error in instruction was pertinent or material to what the jury must consider to convict in Montgomery, we found that “fundamental error occurred in [that] case, where Montgomery was indicted and tried for first-degree murder and ultimately convicted of second-degree murder after the jury was erroneously instructed on the lesser included offense of manslaughter.” Montgomery, 39 So.3d at 258.
The instruction given in Daniels’ case both told the jurors that they must find that Daniels “intentionally caused the death of Amanda Lynn Fanter” and that “it is not necessary for the State to prove *419 that the defendant had a premeditated intent to cause death, only an intent to commit an act which caused death.” Thus, the instruction contains conflicting or, at a minimum, confusing mandates to the jury. In addition, the phrase added in 2008 relates primarily to whether the jury must find premeditated intent and does not clearly relate back to or negate the second element of the instruction, which required proof of Daniels’ intent to cause death.
Because we find that the 2008 jury instruction on manslaughter by act suffers from the same infirmity that this Court found erroneous in Montgomery, and because the record reflects that the issue of whether Daniels intentionally caused Fan-ter’s death was disputed and was pertinent and material to what the jury had to consider in order to reach its verdict as to first-degree murder, second-degree murder, or manslaughter, we hold that the error was fundamental in this case. In reaching the verdict that it did — second-degree murder — the jury necessarily concluded that Daniels had no intent to kill. Because of the continuing requirement in part of the 2008 instruction that the jury find intent to kill in order to convict for manslaughter by act, the jury was left with second-degree murder as the only other non-intentional alternative. Thus, because fundamental error occurred in this case, a new trial is required.
CONCLUSION
Based on the foregoing, we quash the decision of the Second District in Daniels v. State, 72 So.3d 227 (Fla. 2d DCA 2011), and remand for proceedings consistent with this opinion. We approve the First District’s decision in Riesel v. State, 48 So.3d 885 (Fla. 1st DCA 2010).
It is so ordered.
PARIENTE, LEWIS, and PERRY, JJ., concur.
CANADY, J., dissents with an opinion, in which POLSTON, C.J., and QUINCE, J., concur.

. See Fla. Std. Jury Instr. (Crim.) 7.7 (2008); see also In re Standard Jury Instructions in Criminal Cases—Report No. 2007-10, 997 So.2d 403, 404 (Fla.2008).

. Some witnesses heard two shots and some heard only one. The victim died from one gunshot wound that severed her carotid artery. The projectile recovered from the body matched Daniels' .357 caliber handgun, which Daniels provided to the deputies. Another man with Daniels also carried a handgun, but it was .22 caliber.

. Section 775.087(2), Florida Statutes (2007).

. See In re Standard Jury Instructions in Criminal Cases—Report No. 2007-10, 997 So.2d at 404 (adding the underlined language to the 2006 instruction).

. Second-degree murder is only one step removed from the crime of manslaughter. We held in Pena that “when the trial court fails to properly instruct on a crime two or more degrees removed from the crime for which the defendant is convicted, the error is not per se reversible, but instead is subject to a harmless error analysis.” Pena, 901 So.2d at 787.

. We made clear when we amended the manslaughter by act jury instruction in 2008 that in authorizing the publication and use of the amended standard jury instruction, "we express no opinion on the correctness of this instruction and remind all interested parties that this authorization forecloses neither requesting additional or alternative instructions nor contesting the legal correctness of the instruction.” In re Standard Jury Instructions in Criminal Cases—Report No. 2007-10, 997 So.2d at 404.

. For example, the prosecutor argued at various times: "He was looking in the direction where he pulled the trigger. He wasn’t just blindly firing this gun. He wasn’t firing a warning shot in the air. Here's this woman within feet of him, and he’s holding the gun out, looking in the direction of the gun, and he fires.”; "And there is no timeframe for premeditation. It’s not a second. It's not five minutes. It's not two days. It's not three years. It can happen in a matter of milliseconds. Premeditation. It can happen from [the] time when Aaron Daniels lifts up the gun, looks in Amanda Fanter's direction and decides to pull the trigger.”; "He came there to shoot somebody, and when she gets into his face and tells him to leave, that they have children there and to leave the property, and he’s already so angry, I submit to you that he raised that gun and he thought about it for that split second, and he pulled the trigger.”; "If you find first degree murder, this is the only one that makes sense, because it’s clear that he said he busted off a round, and he said he aimed the gun.”; and "He was able to point that gun, and the bullet went exactly where he aimed. This is not manslaughter.”