# Supreme Court of Florida

_____

No. SC15-1613
_____

**STATE OF FLORIDA,**
Petitioner,

vs.

**NICOLAS DOMINIQUE,**
Respondent.

[March 30, 2017]

LABARGA, C.J.

This case is before the Court for review of the decision of the Fourth District Court of Appeal in Dominique v. State (Dominique II), 171 So. 3d 204 (Fla. 4th DCA 2015). The district court certified that its decision is in express and direct conflict with the decision of the Third District Court of Appeal in Dawkins v. State, 170 So. 3d 81 (Fla. 3d DCA 2015). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons we explain, we quash the decision in Dominique II and approve the decision in Dawkins.

## FACTS AND PROCEDURAL BACKGROUND

Nicolas Dominique was charged with first-degree murder and ultimately convicted of the second-degree murder of Dwayne Clementson. Dominique II, 171 So. 3d at 204. The district court provided a brief summary of the facts as follows:

> At the trial, the state presented evidence that the defendant was outside of his former girlfriend's house when her new boyfriend arrived by car. When the new boyfriend exited his car, the defendant chased the new boyfriend down the street while firing a gun, shooting the new boyfriend in the leg which caused him to fall, and then shooting the new boyfriend in the back of the head, killing him.
>
> The state argued that the defendant's actions constituted first-degree murder. The defendant argued that his actions in chasing the new boyfriend down the street while firing his gun was [sic], at worst, manslaughter by culpable negligence.
>
> The trial court instructed the jury on first-degree murder, second-degree murder, manslaughter by act, and manslaughter by culpable negligence. The jury found the defendant guilty of second-degree murder.

Id. at 204-05.

Dominique's jury was instructed on the lesser included offense of manslaughter by act with the same instruction that this Court found to be fundamentally erroneous in State v. Montgomery, 39 So. 3d 252 (Fla. 2010), which instructed the jury that to convict for manslaughter by act, the jury must find that the defendant intentionally caused the death of the victim—a finding of an intent to kill that was not an element of the offense of manslaughter by act. On direct appeal, Dominique argued that he was entitled to relief in light of Montgomery, but

the Fourth District disagreed and affirmed.  See Dominique II, 171 So. 3d at 205.

The Fourth District rejected the fundamental error claim based on the fact that the

trial court also instructed the jury on the lesser included offense of manslaughter by

culpable negligence.  See Dominique v. State (Dominique I), 40 So. 3d 33, 36 (Fla.

4th DCA 2010).

The case then came to this Court on petition for review of the decision in

Dominique I.  However, we stayed that case pending the disposition of the review

of the decision of the Second District Court of Appeal in Haygood v. State, 54 So.

3d 1035 (Fla. 2d DCA 2011), which was then before this Court.  Our decision in

Haygood v. State, 109 So. 3d 735 (Fla. 2013), was subsequently issued and held

that the fundamental error caused by the erroneous Montgomery manslaughter by

act instruction was not cured by giving the instruction on manslaughter by culpable

negligence where there was no evidence from which a jury could reasonably

convict of manslaughter by culpable negligence.  See id. at 743.  After our decision

in Haygood was issued, and upon review of the response to this Court's Order to

Show Cause, we granted the petition for review, summarily quashed the decision

of the Fourth District in Dominique I, and remanded to the district court for

reconsideration in light of our decision in Haygood.  See Dominique v. State, 160

So. 3d 894 (Fla. 2014) (table report of unpublished order).

- 3 -

On remand, the Fourth District reversed the conviction and held that fundamental error occurred in the giving of the jury instruction for manslaughter by act, requiring a new trial. Dominique II, 171 So. 3d at 204. The Fourth District interpreted our decision in Haygood to require a new trial any time the erroneous manslaughter by act instruction is given and the defendant is convicted of an offense not more than one step removed from manslaughter—regardless of whether the evidence could support a finding of manslaughter by culpable negligence. The district court certified express and direct conflict with Dawkins v. State, 170 So. 3d 81, 81 (Fla. 3d DCA 2015), and the State sought review of Dominique II in this Court based on that certified conflict.

In this case, the State contends that the Fourth District in Dominique II misreads Haygood and other cases following Montgomery to incorrectly hold that the erroneous manslaughter by act instruction is fundamental error in all cases, regardless of whether the manslaughter by culpable negligence instruction is given and regardless of whether there is evidence that reasonably supports manslaughter by culpable negligence. Thus, this iteration of a Montgomery challenge focuses on the district court's interpretation of this Court's decision in Haygood.

The Fourth District concluded that this Court's evolution from Montgomery to Haygood to Griffin[1] demonstrates that giving the manslaughter by act instruction is per se reversible error, even where there is evidence that could support a finding of manslaughter by culpable negligence. The court stated that the culpable negligence instruction "cannot under any circumstance cure" the error created by the faulty manslaughter by act instruction because the error is always pertinent or material to what the jury had to consider to convict the defendant of manslaughter. Dominique II, 171 So. 3d at 207. The district court also noted, "We recognize the state's factual distinction from Haygood that giving the erroneous manslaughter by act instruction is fundamental error where the evidence does not support the accompanying manslaughter by culpable negligence instruction, whereas here the evidence arguably supported the accompanying manslaughter by culpable negligence instruction." Id. at 205. Nevertheless, the district court went on to find the error fundamental and per se reversible. The Fourth District explained:

> In contrast to the Third District [in Dawkins], under our reading of the evolving precedent from Montgomery to Haygood to Griffin, giving the manslaughter by culpable negligence instruction cannot under any circumstance cure the fundamental error caused by giving

---

1. Griffin v. State, 160 So. 3d 63, 70 (Fla. 2015) (holding that the giving of the erroneous manslaughter by act instruction constituted fundamental error where the defendant offered a misidentification defense at trial, which did not concede the element of intent). The Haygood issue was not present in Griffin.

- 5 -

the erroneous manslaughter by act instruction, even where the evidence reasonably could support a finding of manslaughter by culpable negligence.

Id. at 207 (bracketed material added). Dawkins held that "where the jury was also instructed in manslaughter by culpable negligence and the evidence could reasonably support so finding, the error in giving the flawed Montgomery manslaughter by act instructions was not per se fundamental error." 170 So. 3d at 83. Thus, the Fourth District certified conflict with Dawkins. Before resolving the certified conflict, we review our decision in Haygood, which is central to this case.

## Haygood v. State

In 2013, this Court issued its decision in Haygood, which is yet another case arising out of a Montgomery fundamental error claim. In Haygood, we stated:

> We hold that giving the erroneous manslaughter by act instruction, which we found to be fundamental error in State v. Montgomery, 39 So. 3d 252 (Fla. 2010), is also fundamental error even if the instruction on manslaughter by culpable negligence is given where the evidence supports manslaughter by act but does not support culpable negligence and the defendant is convicted of second-degree murder.

Haygood, 109 So. 3d at 737 (footnote omitted) (emphasis added). In Montgomery, we held that the standard jury instruction on manslaughter by act was erroneous because it imposed an element of an intent to kill not contained in section 782.07, Florida Statutes (2005), the manslaughter statute. The error was found to be fundamental in Montgomery, where the defendant was charged with first-degree murder but was convicted of second-degree murder, only one step removed from

- 6 -

manslaughter.  Montgomery, 39 So. 3d at 260.  We reiterated in Montgomery that the erroneous jury instruction was fundamental error because it was "pertinent or material to what the jury must consider in order to convict" and it pertained to an element of the crime that was in dispute.  Montgomery, 39 So. 3d at 258 (quoting State v. Delva, 575 So. 2d 643, 645 (Fla. 1991)).  Whether the error could be cured because of the giving of a culpable negligence instruction was not at issue in Montgomery.

In Haygood, we were asked to apply the Montgomery decision to a case in which the erroneous manslaughter by act instruction was given, but where the jury was also instructed on the lesser included offense of manslaughter by culpable negligence.  The circumstances of the homicide were the driving factors in determining whether fundamental error occurred by the erroneous instruction or whether also giving the instruction on manslaughter by culpable negligence "cured" the error.  We explained in Haygood that the defendant was angry with his girlfriend and beat her, causing her to fall, hit her head, and become unconscious.  Haygood, 109 So. 3d at 737.  At that point, Haygood had his mother call for an ambulance and he attempted to perform CPR.  Haygood told police that he had consumed nine beers and was not completely sober, and had hit her in a rage over her infidelity.  Id.  He said he did not mean to seriously injure her, and called her death an accident because "I didn't mean to kill her."  Id.

A main consideration by this Court in concluding that the manslaughter by culpable negligence instruction did not cure the erroneous manslaughter by act instruction in <u>Haygood</u> was explained as follows:

> The evidence in this case supported a finding that Haygood intentionally committed an act or acts, and that the act or acts resulted in the victim's death. <u>The evidence also supported a finding that he had no intent to kill the victim. Significantly, there was no evidence to support a finding that Tuckey's death resulted from culpable negligence.</u> Haygood's unambiguous admission that he intended to strike, head butt, choke, and trip Tuckey essentially eliminated the alternate means of committing manslaughter—manslaughter by culpable negligence—as a viable lesser offense. <u>Thus, second-degree murder was the only offense realistically available to the jury under the evidence presented in this case and the instructions given— instructions that required the jury to find intent to kill in order to convict Haygood for manslaughter by act.</u>

<u>Haygood</u>, 109 So. 3d at 741-42 (emphasis added). Thus, where second-degree murder is the only viable lesser included offense when the jury finds there is no intent to kill, the error in the manslaughter by act instruction in requiring an intent to cause death is fundamental if the defendant is convicted of second-degree murder, one step removed from manslaughter. In applying both <u>Montgomery</u> and <u>Haygood</u> to a given case in which the defendant is convicted of an offense not more than one step removed from manslaughter, and in which both the erroneous manslaughter by act instruction and the correct manslaughter by culpable negligence instruction are given, the court will examine whether there is any evidence that could "reasonably support a finding that the death occurred due to

- 8 -

the culpable negligence of the defendant" in determining whether the fundamental error is cured. Haygood, 109 So. 2d at 743. With our decision in Haygood in mind, we turn to an analysis of the issue in this case.

## ANALYSIS

### Standard of Review

The certified conflict identified by the district court below presents solely a legal question; thus, review is de novo. See Daniels v. State, 121 So. 3d 409, 413 (Fla. 2013); Haygood, 109 So. 3d at 739 (citing Kirton v. Fields, 997 So. 2d 349, 352 (Fla. 2008)). Where, as here, the error is unpreserved, we have repeatedly held that jury instructions are subject to the contemporaneous objection rule and, without an objection, error in an instruction can only be raised as fundamental error on appeal. Daniels, 121 So. 3d at 417. Although the defendant has a right to have the jury correctly instructed on the "essential and material elements of the crime charged," id. (quoting Delva, 575 So. 2d at 644), not all errors in jury instructions are fundamental. See Garzon v. State, 980 So. 2d 1038, 1042 (Fla. 2008). We explained in Delva:

> To justify not imposing the contemporaneous objection rule, "the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Brown[ v. State, 124 So. 2d 481, 484 (Fla. 1960)]. In other words, "fundamental error occurs only when the omission is pertinent or material to what the jury must consider in order to convict."

Delva, 575 So. 2d at 644-45 (quoting Stewart v. State, 420 So. 2d 862, 863 (Fla. 1982)).  With these standards in mind, and in light of our decision in Haygood, a more detailed review of the evidence and instruction given at trial in this case is necessary.

**Discussion**

Dominique was charged with and tried for first-degree murder, but was convicted of second-degree murder.  The manslaughter instructions given at his trial were as follows:

> To prove the crime of manslaughter, the State must prove the following two elements beyond a reasonable doubt:
> 1. Dwayne Clementson is dead.
> 2. (a) Nicolas Dominique intentionally caused the death of Dwayne Clementson.
> or
> (b) The death of Dwayne Clementson was caused by the culpable negligence of Nicolas Dominique.
> However, the defendant cannot be guilty of manslaughter if the killing was either justifiable or excusable homicide as I have previously explained those terms.
> In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to cause death.
> I will now define "culpable negligence" for you.  Each of us has a duty to act reasonably toward others.  If there is a violation of that duty, without any conscious intention to harm, that violation is negligence.  But culpable negligence is more than a failure to use ordinary care toward others.  In order for negligence to be culpable, it must be gross and flagrant.  Culpable negligence is a course of conduct showing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or such an entire want of care as to raise a presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a

- 10 -

grossly careless disregard for the safety and welfare of the public, or such an indifference to the rights of others as is equivalent to an intentional violation of such rights.

The negligent act or omission must have been committed with an utter disregard for the safety of others. Culpable negligence is consciously doing an act or following a course of conduct that the defendant must have known, or reasonably should have known, was likely to cause death or great bodily injury.

In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the Defendant had a premeditated intent to cause death.

No objection was made to the manslaughter instruction as given, even though the manslaughter by act instruction erroneously required the jury to find an intent to kill. See Montgomery, 39 So. 3d at 255.

The Fourth District Court of Appeal, on remand from this Court, correctly quoted our Haygood decision by stating:

[G]iving the erroneous manslaughter by act instruction, which we found to be fundamental error in State v. Montgomery, 39 So. 3d 252 (Fla. 2010), is also fundamental error even if the instruction on manslaughter by culpable negligence is given where the evidence supports manslaughter by act but does not support culpable negligence and the defendant is convicted of second-degree murder.

Dominique II, 171 So. 3d at 205 (quoting Haygood, 109 So. 3d at 737). This portion of the Haygood decision shows that this Court was leaving open the possibility that the error can be cured even when the defendant is convicted of second-degree murder, one step removed from manslaughter, under certain circumstances. Those circumstances include when the instruction for

manslaughter by culpable negligence is also given and the evidence reasonably supports a finding of manslaughter by culpable negligence.

The Fourth District in Dominique II also quoted the portion of Haygood that reiterated the principle that fundamental error occurs where "the instruction pertains to a disputed element of the offense and the error is pertinent or material to what the jury must consider." 171 So. 3d at 205 (quoting Haygood, 109 So. 3d at 741). The district court concluded that the factual distinction between cases where the evidence does not support culpable negligence and cases where, as here, the evidence "arguably supported the accompanying manslaughter by culpable negligence instruction" was "not central to the Supreme Court's reasoning in Haygood." Id. at 205-06. Thus, the district court in Dominique II held that "under our reading of the evolving precedent from Montgomery to Haygood to Griffin, giving the manslaughter by culpable negligence instruction cannot under any circumstance cure the fundamental error caused by giving the erroneous manslaughter by act instruction, even where the evidence reasonably could support a finding of manslaughter by culpable negligence." Id. at 207.

In reaching this holding, the district court misapplied our decisions in Haygood and Griffin to the issue of fundamental error under the facts of cases such as this one. The distinction between cases in which there is evidence that could reasonably support manslaughter by culpable negligence and those, like Haygood,

- 12 -

where it cannot was indeed central to our decision in <u>Haygood</u>. Although the Fourth District is correct that this Court has held intent is always pertinent or material to what the jury must consider to convict in a homicide prosecution, that statement cannot be considered in isolation when determining if fundamental error in the giving of the erroneous jury instruction for manslaughter by act can ever be cured. Intent is always pertinent in a homicide prosecution and where, as here, the jury concludes there was no intent to kill, the question then arises what nonintentional homicide lesser offenses are available for the jury's consideration and supported by the evidence. In <u>Haygood</u>, we found fundamental error occurred because manslaughter by act was misinstructed to require an intent to kill and was thus unavailable as a nonintentional lesser included offense. The instruction on manslaughter by culpable negligence was given but was not supported by the evidence—thus not curing the fundamental error created by the erroneous manslaughter by act instruction.

The district court's reliance on <u>Griffin</u> to explain its holding in this case was also misplaced. First, the issue in <u>Griffin</u> did not turn on the culpable negligence instruction. Instead, the issue was whether a defense of misidentification in a homicide prosecution waives all elements of the crime other than identity— including the element of intent. We clarified in <u>Griffin</u> that intent remains in dispute, and remains the burden of the State to prove, in a homicide prosecution

- 13 -

even when misidentification is the defense, because intent determines what level of

offense has been committed.  We explained:

> When the question before the jury is whether an unlawful homicide occurred, and the jury finds that the killing was not justifiable or excusable, the jury must then determine the degree of the offense based upon the intent, if any, that the State proves existed at the time of the homicide.  A homicide found to be unlawful is not automatically just one offense, but will be one of several possible homicide offenses depending upon the nature of the intent or the lack of any intent at the time of the homicide.  For example, if the State has charged first-degree murder, a necessary jury inquiry is whether the State proved premeditated intent to kill.  Lacking that proof, the jury must then determine whether the defendant killed "by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life."  Fla. Std. Jury Instr. (Crim.) 7.4.  "Imminently dangerous to another and demonstrating a depraved mind" is defined in pertinent part as an act that "is done from ill will, hatred, spite, or an evil intent."  If the jury concludes that the killing was neither premeditated nor done with a depraved mind as that term is defined, the jury must then decide if the defendant is guilty of manslaughter by having committed an intentional act that resulted in death, but without any intent to kill or evil intent (depraved mind) on the defendant's part.  Thus, it can be seen that in every killing alleged to be an unlawful homicide, the jury must necessarily consider the intent behind the killing, or find lack of any intent behind the killing, before it can determine what, if any, offense has been committed.

Griffin, 160 So. 3d at 68-69.  Second, Griffin did not recede sub silentio from

Haygood or modify in any respect the principle announced in that case that giving

the culpable negligence instruction does not cure the fundamental error created by

the erroneous manslaughter by act jury instruction where the evidence does not

reasonably support manslaughter by culpable negligence.  The converse of this

holding, which is applicable here, is that the culpable negligence instruction can

- 14 -

cure the fundamental error created by the erroneous manslaughter by act instruction where the evidence <u>does</u> reasonably support manslaughter by culpable negligence.

In the present case, because the manslaughter by culpable negligence instruction was given, the question becomes whether the evidence could support a finding of that nonintentional homicide, thus curing the fundamental error created by the erroneous manslaughter by act instruction. And, as explained in <u>Haygood</u> and other cases concerning fundamental error, the fact that the evidence could arguably support a verdict for second-degree murder, an offense also not requiring an intent to kill, is not determinative of whether fundamental error occurred. <u>See, e.g.</u>, <u>Haygood</u>, 109 So. 3d at 741.

The instruction for second-degree murder, in part, asks the jury to determine if the killing was the result of an act that was "imminently dangerous to another and demonstrating a depraved mind." Fla. Std. Jury Instr. (Crim.) 7.4 Murder—Second Degree. This is defined as an act done with "ill will, hatred, spite, or an evil intent" showing "indifference to human life," and which a person of ordinary intelligence would know is "reasonably certain to kill or do serious bodily injury." <u>Id.</u>

The instruction for manslaughter by culpable negligence also requires, in part, evidence that the killing was the result of an act showing "reckless disregard

of human life" and was an act that the defendant "must have known, or reasonably should have known, was likely to cause death or great bodily injury." Fla. Std. Jury Instr. (Crim.) 7.7 Manslaughter. In these two respects the offenses have somewhat similar elements. However, as noted above, to convict for second-degree murder, the jury must also find that the actions demonstrate a "depraved mind" which is proven by acts that are "done from ill will, hatred, spite, or an evil intent." Fla. Std. Jury Instr. (Crim.) 7.4. Manslaughter by culpable negligence has no requirement that the jury find a depraved mind, ill will, hatred, spite, or evil intent. See Fla. Std. Jury Instr. (Crim.) 7.7.

Thus, where a jury determines that the evidence does not prove an intent to kill, the jury must then determine if any lesser included offense not requiring an intent to kill is available for their consideration and has been proven. Where the instruction on manslaughter by culpable negligence is given as well as the instruction for second-degree murder, the jury will examine the evidence for proof of the level of disregard for safety and human life and for evidence, if any, of an act imminently dangerous to another and demonstrating a depraved mind without regard for human life. Both lesser included offenses lack any requirement of an intent to kill. Whether the defendant is guilty of one or the other will turn in large part on whether the defendant is proved to have committed the homicide with a level of ill will, hatred, spite, or evil intent rising to the level of a depraved mind

required for second-degree murder. Therefore, we examine the evidence presented during trial to determine if it reasonably could support a finding by the jury that the killing resulted from culpable negligence, thus providing the jury with a viable alternative to second-degree murder that also did not require an intent to kill.

## This Case

Dominique was charged with and prosecuted for first-degree murder. Clearly, the jury did not find a premeditated intent to kill because he was convicted of second-degree murder, an offense that does not require an intent to kill. The jury also had the option to find him guilty of manslaughter by culpable negligence, a lesser included offense also not requiring an intent to kill. We have examined the evidence presented at trial and conclude that it reasonably supported the lesser included offense of manslaughter by culpable negligence. Even though the jury was foreclosed from finding Dominique guilty of manslaughter by act due to the erroneous instruction, the jury still had a viable, nonintentional lesser included homicide offense for which he could have been convicted.

The testimony established that on the night of the shooting, Dominique was on the telephone with his girlfriend, Vonshell Lindsay, when she told him their breakup was final and that she was getting back together with Clementson, the victim in this case. At that same moment, Dominique, who was sitting in a borrowed car in Lindsay's neighborhood, saw Clementson drive toward the house

where Lindsay was visiting. Although Dominique was in the neighborhood, he told police it was only to talk with Lindsay, and there was no evidence that Dominique knew Clementson would be there. Dominique told police that he had a gun with him in the car he borrowed from his sister, explaining to police that he usually had it with him. When Dominique started walking toward Lindsay's house, Clementson drove by him. Dominique told officers that at that point, he grabbed the gun and went after Clementson, firing "a whole bunch of shots" while running. He told police he was shooting wildly without aiming, and that he hoped Clementson was still alive. Witnesses also testified that Dominique was running in the dark while firing with his arm extended. The only witness who saw Dominique actually fire the gun testified first that he took aim, but she almost immediately receded from that testimony and agreed that "[i]t was not like he stood there and [sighted in on] the man before he took the shot."

We conclude that this evidence reasonably meets the test for "reckless disregard for human life" and that the defendant must have known, or reasonably should have known, that these actions were likely to cause death, as required by the jury instruction for manslaughter by culpable negligence as well as second-degree murder. Certainly, Dominique's actions demonstrated want of care, wantonness, recklessness, or gross disregard for the safety of others, as is required under both the manslaughter by culpable negligence jury instruction and the

instruction for second-degree murder. Accordingly, the jury had before it two viable alternatives, neither of which required an intent to kill. It was for the jury to determine if the evidence rose to the level of depraved mind such that second-degree murder was proven, a conclusion the jury reached in this case.

Because the jury was correctly instructed on manslaughter by culpable negligence, which does not require an intent to kill, the jury did have a nonintentional homicide offense for which they could have convicted Dominique as an alternative to second-degree murder. Under these facts, it cannot be said that "the verdict of guilty [of second-degree murder] could not have been obtained without the assistance of the alleged error." Delva, 575 So. 2d at 645 (bracketed material added) (quoting Brown v. State, 124 So. 2d 481, 484 (Fla. 1960)). Thus, under Haygood, the fundamental error in giving the erroneous manslaughter by act instruction was cured. For the reasons discussed, we quash the decision in Dominique II. Because this case is before the Court on certified conflict, the certified conflict case of Dawkins is discussed next.

**The Certified Conflict Case**

The Fourth District in Dominique II certified conflict with the decision of the Third District in Dawkins v. State. In Dawkins, the district court had before it a petition for writ of habeas corpus alleging ineffective assistance of appellate counsel for failure to move for rehearing based on the Third District's decision in

Cubelo v. State, 41 So. 3d 263 (Fla. 3d DCA 2010), and the Second District's decision in Haygood v. State, 54 So. 3d 1035 (Fla. 2d DCA 2011), both of which this Court quashed.[2] See Dawkins, 170 So. 3d at 82.

The Third District denied the petition in Dawkins. In doing so, the court stated that "where the jury was also instructed in manslaughter by culpable negligence and the evidence could reasonably support so finding, the error in giving the flawed Montgomery manslaughter by act instruction was not per se fundamental error." Id. at 83. Applying our holding in Haygood, the Dawkins court concluded that there existed some disputed evidence from which the jury reasonably could have found Dawkins guilty of manslaughter by culpable negligence, in contrast to the facts in Haygood. See Dawkins, 170 So. 3d at 82. Because the Third District correctly interpreted this Court's analysis and principle announced in Haygood, the Dawkins decision is approved.

**CONCLUSION**

The evidence in this case reasonably supported the lesser included offense of manslaughter by culpable negligence. Thus, under Haygood, the giving of the

---

2. On remand, the Third District reversed Cubelo's conviction and remanded for a new trial because of the erroneous manslaughter by act instruction. The court concluded that the error was not cured by the culpable negligence instruction because the evidence did support manslaughter by act but did not support manslaughter by culpable negligence. Cubelo v. State, 137 So. 3d 1193, 1193 (Fla. 3d DCA 2014).

- 20 -

manslaughter by culpable negligence instruction cured the fundamental error in the giving of the erroneous manslaughter by act instruction. Accordingly, we quash the decision of the Fourth District in Dominique v. State, 171 So. 3d 204 (Fla. 4th DCA 2015), and remand to the district court with instructions to further remand to the trial court to reinstate the conviction and sentence. We approve the conflict decision of Dawkins v. State, 170 So. 3d 81 (Fla. 3d DCA 2015).

It is so ordered.

PARIENTE, LEWIS, and QUINCE, JJ., concur.
CANADY and POLSTON, JJ., concur in result.
LAWSON, J., concurs in result only.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal – Certified Direct Conflict of Decisions

Fourth District - Case No. 4D08-2031

(Broward County)

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; Celia A. Terenzio, Bureau Chief, and Jeanine Germanowicz, Assistant Attorney General, West Palm Beach, Florida,

for Petitioner

Carey Haughwout, Public Defender, Richard B. Greene, and Patrick B. Burke, Assistant Public Defenders, Fifteenth Judicial Circuit, West Palm Beach, Florida,

for Respondent