DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LEROY SINGH,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D08-2171

[January 10, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Eileen M. O'Connor, Judge; L.T. Case No. 06-14626 CF10A.

Carey Haughwout, Public Defender, and John M. Conway and Paul E. Petillo, Assistant Public Defenders, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Diane F. Medley, Nancy Jack and Heidi L. Bettendorf, Assistant Attorneys General, West Palm Beach, for appellee.

*ON REMAND FROM*
*THE FLORIDA SUPREME COURT*

CIKLIN, J.

On remand from the Florida Supreme Court, we are tasked with reconsidering our previous decision in light of *State v. Dominique*, 215 So. 3d 1227 (Fla. 2017). The defendant was charged with first-degree murder with a firearm and convicted of the lesser included offense of second-degree murder with a firearm. He argues that the manslaughter by act instruction, previously deemed to constitute fundamental error for requiring a finding of an intent to kill,[1] was not cured by the giving of the manslaughter by culpable negligence jury instruction. We disagree and affirm.

---

[1] *State v. Montgomery*, 39 So. 3d 252, 254 (Fla. 2010).

In *Haygood v. State*, 109 So. 3d 735, 743 (Fla. 2013), the court held as follows:

> [G]iving the manslaughter by culpable negligence instruction does not cure the fundamental error in giving the erroneous manslaughter by act instruction where the defendant is convicted of an offense not more than one step removed from manslaughter and the evidence supports a finding of manslaughter by act, but does not reasonably support a finding that the death occurred due to the culpable negligence of the defendant.

Subsequently, in *Dominique*, another case involving a conviction for the lesser included offense of second-degree murder, the supreme court elaborated on the circumstances under which giving the manslaughter by culpable negligence instruction cures the error addressed in *Haygood*:

> [W]here a jury determines that the evidence does not prove an intent to kill, the jury must then determine if any lesser included offense not requiring an intent to kill is available for their consideration and has been proven. Where the instruction on manslaughter by culpable negligence is given as well as the instruction for second-degree murder, the jury will examine the evidence for proof of the level of disregard for safety and human life and for evidence, if any, of an act imminently dangerous to another and demonstrating a depraved mind without regard for human life. Both lesser included offenses lack any requirement of an intent to kill. Whether the defendant is guilty of one or the other will turn in large part on whether the defendant is proved to have committed the homicide with a level of ill will, hatred, spite, or evil intent rising to the level of a depraved mind required for second-degree murder. Therefore, we examine the evidence presented during trial to determine if it reasonably could support a finding by the jury that the killing resulted from culpable negligence, thus providing the jury with a viable alternative to second-degree murder that also did not require an intent to kill.

215 So. 3d at 1235. The court then reviewed the evidence introduced at trial:

> The testimony established that on the night of the shooting, Dominque was on the telephone with his girlfriend, Vonshell

2

Lindsay, when she told him their breakup was final and that she was getting back together with Clementson, the victim in this case. At that same moment, Dominique, who was sitting in a borrowed car in Lindsay's neighborhood, saw Clementson drive toward the house where Lindsay was visiting. Although Dominique was in the neighborhood, he told police it was only to talk with Lindsay, and there was no evidence that Dominique knew Clementson would be there. Dominique told police that he had a gun with him in the car he borrowed from his sister, explaining to police that he usually had it with him. When Dominique started walking toward Lindsay's house, Clementson drove by him. Dominique told officers that at that point, he grabbed the gun and went after Clementson, firing "a whole bunch of shots" while running. He told police he was shooting wildly without aiming, and that he hoped Clementson was still alive. Witnesses also testified that Dominique was running in the dark while firing with his arm extended. The only witness who saw Dominique actually fire the gun testified first that he took aim, but she almost immediately receded from that testimony and agreed that "[i]t was not like he stood there and [sighted in on] the man before he took the shot."

*Id.* at 1236 (alterations in original). The court affirmed the defendant's conviction, reasoning as follows:

[T]his evidence reasonably meets the test for "reckless disregard for human life" and [] the defendant must have known, or reasonably should have known, that these actions were likely to cause death, as required by the jury instruction for manslaughter by culpable negligence as well as second-degree murder. Certainly, Dominique's actions demonstrated want of care, wantonness, recklessness, or gross disregard for the safety of others, as is required under both the manslaughter by culpable negligence jury instruction and the instruction for second-degree murder. Accordingly, the jury had before it two viable alternatives, neither of which required an intent to kill. It was for the jury to determine if the evidence rose to the level of depraved mind such that second-degree murder was proven, a conclusion the jury reached in this case.

*Id.*

3

Here, as in *Dominique*, the evidence supported both second-degree murder and manslaughter by culpable negligence. There was testimony that Singh and the victim had a fraught history and that on the day of the shooting, they had a heated argument that nearly turned physical. There was also testimony that the defendant intended to shoot the victim, that he aimed at the victim, and that they were standing near one another. However, there was also evidence that the defendant did not know how to aim, that he did not know how many bullets were in the gun that another man handed to him shortly before the shooting, and that he shot in a panicked rather than methodical manner. Indeed, there was testimony that a bullet ricocheted off of a nearby vehicle that was facing the apartment building where the victim was shot. Further, during closing argument, the prosecutor pointed out that the defendant "started shooting at everything that moved."

After examining all of the evidence, we find that the jury had "two viable alternatives, neither of which required an intent to kill," and that it determined that "the evidence rose to the level of depraved mind such that second-degree murder was proven."

*Affirmed.*

GERBER, C.J., and FORST, J., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***